**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HENRY McINTOSH,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1419** |
| | ) | **Electronically Filed** |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**October 20, 2006**

**I.     Introduction**

Henry McIntosh brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

seeking review of the final determination of the Commissioner of Social Security

("Commissioner") denying his application pursuant to the Social Security Act ("Act") for

Supplemental Security Income ("SSI") Disability Insurance Benefits ("DIB").  Consistent with

the customary practice in the Western District of Pennsylvania, both parties have submitted cross

motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision that plaintiff

would not be disabled but for his substance abuse is supported by substantial evidence.  The

Court therefore will deny plaintiff's motion for summary judgment, grant the Commissioner's

motion for summary judgment, and enter judgment in favor of the Commissioner.

**II.     Procedural History**

Plaintiff, born on August 30, 1957,  filed his application for SSI and DIB on September 25, 2003, alleging disability from work as of May 7, 2003, due to back and knee impairments. Following administrative denial of benefits, plaintiff appealed and a hearing was conducted before ALJ Melvin Rosenberg on January 13, 2005, at which plaintiff, represented by counsel, testified, as did a vocational expert ("VE").  On April 23, 2005, the ALJ denied the plaintiff's claim, finding that but for his alcohol abuse, he would not be disabled within the meaning of the Act.  R. 22.  The ALJ further found that, absent the limitations relating to plaintiff's alcohol abuse, he retained the residual functional capacity ("RFC") to perform simple, unskilled, low stress work activities, and that such jobs were available in the national economy, including hand packer, sorter/grader, and assembler.  R. 20.

On August 26, 2005, the Appeals Council affirmed the ALJ's decision, which thus became the final decision of the Commissioner.  Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's final decision.

**III.     Statement of the Case**

Plaintiff has undoubtedly suffered both physical and mental impairments over the past few years.  In addition to his extensive history of alcohol abuse, he also has suffered from mood disorders, right patellofemoral disease, discogenic and degenerative disorders of the spine, and residual lower back pain from an old gunshot wound.  Plaintiff's treating psychiatrist, Dr. Amitabh Singh, stated that plaintiff's mental disorders were markedly improved during periods

of sobriety, and plaintiff offered no evidence contradicting the Commissioner's finding that

alcohol dependency materially contributed to any disability.

The ALJ made the following specific findings:

1.  The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2008.

2.  The claimant has not engaged in substantial gainful activity since May 7, 2003.

3.  The claimant has the following severe impairments: alcohol abuse/dependency related mood disorders (major depression and schizoaffective disorder), right patellofemoral disease, discogenic and degenerative disorders of the spine, and residual low back pain related to an old gunshot wound (20 CFR §§ 404.1520(c) and 416.920(b)).

4.  The undersigned finds the claimant's allegations regarding his limitations are not credible for the reasons set forth in the body of the decision.

5.  The claimant remains an alcoholic.

6.  The claimant's substance abuse is a contributing factor material to my finding of disability.

7.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

8.  Absent the limitations related to the claimant's alcohol abuse, his residual functional capacity would permit him to perform work that does not require more than: the exertional demands of light work, i.e., work involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds (20 CFR §§ 404.1567(b) and []416.978(b)); 4 hours of standing/walking; occasional postural functioning; simple, routine, repetitive work; contact with the general public; independent judgment or decision-making abilities; strict production demands; or frequent changes in the work-setting (20 CFR §§ 404.1520(e), 404.1545, 416.920(e), and 416.945).

9.  The claimant is incapable of performing any of his past relevant work (20 CFR §§ 404.1565 and 416.945).

10.     For the entire period under consideration, the claimant is considered a "younger individual" (between the ages of 18-44) (20 CFR §§ 404.1563 and 416.963).

11.     The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

12.     The claimant has a semi-skilled work background, but [t]he issue of transferable job skills is immaterial (20 CFR §§ 404.1568 and 416.968).

13.     The substantial evidence of record establishes that, but for his substance abuse, the claimant would not be disabled.  Therefore, in accordance with § 105 of Public Law 104-121, enacted March 29, 1996, the claimant is ineligible to receive Supplemental Security Income payments or Disability Insurance Benefits.

14.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

R. 21-22.

In his appeal from these findings and determination, plaintiff argues that the ALJ did not properly consider both his exertional and non-exertional impairments when determining his RFC and subsequent work capability, and he suggests that the ALJ was required to but did not consult a VE.  Plaintiff further questions the extent to which the ALJ relied on the Medical Vocational Guidelines ("grids") as more than a mere "framework" for his decision.

## III.     Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1]  Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"),

regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are

pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v.
Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.
Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing
Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

"substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
        The final determination of the Commissioner of Social Security after a
        hearing under paragraph (1) shall be subject to judicial review as provided in
        section 405(g) of this title to the same extent as the Commissioner's final
        determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

*Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

6

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the

claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The

Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found
> to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*,
> the Commissioner must determine whether the claimant is suffering from a severe
> impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments
> are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's
> impairment to a list of impairments presumed severe enough to preclude any gainful
> work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or
> its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to

7

consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

      If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399

F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not

currently engaged in gainful employment because she (2) is suffering from a severe impairment

(3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her

lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant

satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the

burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant

numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

      Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

      (1)  by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20

C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461

(*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff

must first demonstrate the existence of a medically determinable disability that precludes him or

her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*,

823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous

employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's

mental or physical limitations, age, education and work experience, he or she is able to perform

substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461;

*Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823

F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v.

Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala*

*v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory

testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical

questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a

publication of the United States Department of Labor that contains descriptions of the

requirements for thousands of jobs that exist in the national economy, in order to determine

whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d

Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative

notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant

DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination,

the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material

inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to

do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

---

[3]        Conversely, because the hypothetical question posed to a vocational expert "must
reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the
record "medically undisputed evidence of specific impairments not included in a hypothetical
question to a vocational expert, the expert's response is not considered substantial evidence."
*Podedworny*, 745 F.2d at 218.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in

11

combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.

12

1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony

as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ

may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers*

*v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient

evidence to support his or her claim of disability, the Appeals Council may not base its decision

upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to*

*refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's

testimony is reasonably supported by medical evidence, the finder of fact may not discount the

testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d

Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

   In making his or her determination, the ALJ must consider and weigh all of the evidence,

both medical and non-medical, that support a claimant's subjective testimony about symptoms

and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,

119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

   <u>Medical Opinions of Treating Sources</u>

   "A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments,

speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ ALJ

>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
>> must provide some explanation for a rejection of probative evidence which
>> would suggest a contrary disposition. . . . The [Commissioner] may properly
>> accept some parts of the medical evidence and reject other parts, but she must
>> *consider* all the evidence and *give some reason for discounting* the evidence she
>> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

16

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

---

[4]      Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

17

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment

---

[5]     SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

relationship (its length, frequency of examination, and its nature and extent), supportability by

clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20

C.F.R. § 404.1527 (d)(1-6).

     State Agency Medical and Psychological Consultants

     Medical and psychological consultants of a state agency who evaluate a claimant based

upon a review of the medical record "are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation. Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants or other program

physicians or psychologists as opinion evidence, except for the ultimate determination about

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II

and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of

an individual's impairment(s) must be treated as expert opinion evidence of nonexamining

sources at the administrative law judge and Appeals Council levels of administrative review. 2.

Administrative law judges and the Appeals Council may not ignore these opinions and must

explain the weight given to these opinions in their decisions.").

**V.  Discussion**

     In his brief in support of summary judgment, plaintiff first argues that the ALJ

failed to properly address both his exertional and non-exertional impairments, that the ALJ failed

to solicit expert opinion from a VE taking both his exertional and non-exertional impairments

into account, and therefore, that the evidence failed to show the existence of a significant number

of jobs in the national economy that the plaintiff was capable of performing in the absence of

alcohol abuse.  Plaintiff additionally suggests that the ALJ used the grids as more than merely a

"framework for consideration of how much the individual's work capabilities further diminished

in terms of any types of jobs that would be contradicted by the non-exertional limitations."  *See*

*Stunkard v. Secretary of Health & Human Serv's*,  841 F.2d 57, 60 (3d Cir. 1988).

      1.    <u>The ALJ Properly Considered Both Exertional and Non-Exertional Impairments,
and Solicited an Adequate Opinion from a Vocational Expert</u>.

      The ALJ found that, but for his substance abuse, plaintiff possessed an RFC allowing him

to perform work that requires no more than exertional demands of light work; 4 hours of

standing/walking; occasional postural functioning; simply, routine, repetitive work; contact with

the general public; independent judgment or decision-making abilities; strict production

demands; or frequent changes in the work-setting.  R. 18.  Plaintiff's contention that, in making

this determination of RFC, the ALJ did not consider both his exertional and non-exertional

impairments is belied by the ALJ's written adjudication.  Indeed, in determining plaintiff's RFC,

the ALJ specifically noted that besides his alcoholism, plaintiff's "remaining non-exertional

functional limitations are directly related to the combination of his mental impairments and are

otherwise consistent with his mental health care records."  R. 19.  The ALJ's also considered the

progress notes of plaintiff's treating psychiatrist, Dr. Singh, which confirmed that the plaintiff's

mental status examination was relatively benign while maintaining sobriety in August of 2004.

R. 16.

      Plaintiff further appears to argue that the ALJ failed to "solicit an expert opinion" from a

VE that considered both his exertional and non-exertional impairments.  Brief for Plaintiff at 3.

Called as the VE in this case was Samuel Edelmann, M.Ed., a Fellow of the American Board of

Vocational Experts.  R. 13.  When asking Mr. Edelmann to indicate the amount and type of jobs

available in the national economy, the ALJ instructed the VE to "assume that said hypothetical

individual possesses the residual functional capacity as adopted herein."  R. 20.  As explained

above, the ALJ did in fact consider both plaintiff's exertional and non-exertional impairments in

determining his RFC and included the same in his hypothetical question to the VE.  *See also* R.

324-327.

> 2.    ALJ's Determination of Active Alcohol Abuse.

Additionally, plaintiff's claim for DIB fails because the ALJ properly determined that,

assuming claimant was deemed disabled, alcohol abuse materially contributed to such disability.

As the ALJ correctly noted, Public Law 104-121 ("The Contract with America Advancement Act

of 1996") states that active alcoholism is no longer a basis for disability.  Specifically, Section

105 of this Act provides that:

> An individual shall not be considered to be disabled for purposes of this
> title if alcoholism or drug addiction would (but for this subparagraph) be a
> contributing factor material to the Commissioner's determination that the
> individual is disabled.

*Id.* at § 105(a)(1), (b)(1) 110 Stat. 847, 852-853 (amending 42 U.S.C. §§ 423(d)(2) and

1382c(a)(3)).

As indicated by Dr. Singh's progress notes, during his period of sobriety plaintiff was

alert and calm; the plaintiff did not exhibit any clinical evidence of delusional thinking or

hallucination; his psychomotor activity was within normal limits, as was his mood; and although

he demonstrated a flat affect, his speech was normal and he denied perceptual disturbances.  R.

16.  Overall, during this period of sobriety, plaintiff's treating psychiatrist observed significant improvement in his mental status, and plaintiff offered no evidence to the contrary.[6]  R. 325. Thus, the ALJ's finding that plaintiff would not be disabled but for his alcohol abuse is supported by substantial evidence of record.

      3.    <u>The ALJ Did Not Place Too Much Weight on the Grids</u>.

The grids "establish[] through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell,* 461 U.S. 458, 461 (1983).  They set forth rules that identify whether jobs requiring specific combinations of physical ability, age, education, and work experience exist in significant numbers in the national economy.  *Id.* at 461-62.  Where a claimant's qualifications match the criteria of a particular rule, the grids "direct a conclusion as to whether work exists that the claimant could perform." *Id.* at 462.  In view of the ALJ's finding that the claimant had a severe non-exertional impairment, the Court further stated that it could not establish the existence of other jobs in the national economy that the claimant can perform by relying on the grids alone, even if it used the grids only as a framework instead of to direct a finding of no disability.  *See id.*

Plaintiff's suggestion that the ALJ accorded too much weight to the grids when determining his RFC also is belied by the record.  There is no indication in the ALJ's opinion

---

[6] The claimant bears the burden of proving that disability would continue to exist if the abuse of alcohol were to cease.  *See Brown v. Barnhart*, 111 Soc. Sec. Rep. Serv. 331 (E.D. Pa. 2006); *Sklenar v. Barnhart*, 195 F. Supp. 2d 696 (W.D. Pa. 2002) (adopting the standard set forth by the United States Court of Appeals for the Fifth Circuit in *Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999), that "assuming that [the claimant] is still addicted to drugs and alcohol . . . she must introduce evidence that supports a finding in her favor that she would still be disabled . . . even if she stopped using drugs and alcohol.").

that he relied on the grids, and in fact, the ALJ consulted a VE to aid in determining plaintiff's work capabilities and whether there was work available that plaintiff could perform.  Plaintiff's suggestion that the ALJ improperly relied upon the grids is thus without merit.

**VI.  Conclusion**

The ALJ's determination is supported by substantial evidence, and must therefore be upheld under the appropriate standards of review.  Accordingly, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

An appropriate Order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:  All counsel of record as listed below